2005 ME 41

**YORK HOSPITAL et al.**

v.

**DEPARTMENT OF HUMAN SERVICES et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 20, 2004.
Decided: March 21, 2005.

Joseph M. Kozak, Esq. (orally), Michael D. Seitzinger, Esq., Julius Ciembroniewicz, Esq., Kozak & Gayer, P.A., Augusta, for plaintiffs.

G. Steven Rowe, Attorney General, Janine Keck Massey, Asst. Atty. Gen. (orally), Augusta, John P. Doyle Jr., Esq. (orally), Charles F. Dingman, Esq., Preti Flaherty Beliveau Pachios & Haley, LLC, Portland, (for SMMC/MMC), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

SAUFLEY, C.J.

[¶ 1] York Hospital and Wentworth–Douglass Hospital appeal from an order of the Superior Court (Kennebec County, *Marden, J.*) affirming the decision of the Commissioner of the Department of Human Services[1] granting a Certificate of Need (CON) for a radiation therapy facility to Maine Medical Center and Southern Maine Medical Center (MMC/SMMC)[2] and denying a CON to the three-hospital Collaborative consisting of York Hospital, Wentworth–Douglass Hospital, and Goodall Hospital.[3] The Collaborative argues that (1) the Superior Court exceeded the bounds of its discretion when it denied the Collaborative's motion to correct or modify the record, thereby excluding evidence of agency bias; (2) the Department violated the Collaborative's equal protection rights under the U.S. and Maine constitutions by treating Wentworth–Douglass differently during the review process because it is an out-of-state hospital; and (3) the Department acted arbitrarily and capriciously and/or deprived the Collaborative of due process when it treated the two sets of

---

**1.** The Department of Human Services was subsumed by the Department of Health and Human Services after the present appeal was commenced. *See* P.L.2003, ch. 689 (effective July 1, 2004).

**2.** MMC/SMMC is a directly affected party in this case.

**3.** Goodall Hospital is not a party to this appeal.

applicants differently with regard to the issue of site plan approval.

[¶ 2] We conclude that the Superior Court erred when it denied the Collaborative's motion to correct or modify the record. We therefore vacate the judgment and remand for the Superior Court to take action regarding electronic correspondence that has recently been turned over by the Department. In several other aspects, we affirm the Superior Court's judgment.

## I. BACKGROUND

[¶ 3] On December 13, 2001, the Collaborative submitted an application for a CON to the Department for the development of a radiation treatment facility in Wells. This application was made pursuant to the Maine Certificate of Need Act of 1978.[4] Four months later MMC/SMMC submitted a proposal for a CON describing a competing facility in Wells pursuant to the same statutory provisions.

[¶ 4] The following January, the Department requested additional information from the Collaborative. Part of this request pertained to site plan approval from the Wells Planning Board, and referenced concerns about wetland locations and lot coverage. A competitive review of the two applications began that May.

[¶ 5] Later that year, the Department issued a preliminary assessment that was unfavorable to the Collaborative, primarily because Goodall Hospital was operating under a conditional license as a result of deficiencies noted by the Division of Licensing and Certification, and because Wentworth–Douglass, the only one of the three hospitals accredited by the American College of Surgeon's Commission on Cancer, is not licensed in Maine. This report stated that "the reliance upon in state hospitals to enhance services currently provided will assure the orderly use and development of health care resources in Maine." In addition, the report reflected a concern that under the Collaborative's plan, "simulation services" for all patients would be provided in Dover, New Hampshire, not in Maine.

[¶ 6] On December 4, 2002, the CON Advisory Committee held a public hearing in Wells concerning the two proposals. Following the hearing, the Committee recommended to the Department a favorable finding as to the Collaborative's CON application based on numerous public comments. Later, MMC/SMMC announced a different Wells location for their proposed radiation facility.

[¶ 7] In January 2003, the Department staff issued its recommendation, which was in favor of MMC/SMMC's application. The rationale for this recommendation was essentially the same as that detailed in the preliminary assessment. The Commissioner announced his decision awarding the CON to MMC/SMMC on February 4, 2003. The Commissioner noted patient and physician access, accreditation, comprehensiveness of treatment, and licensure by the State of Maine as the most significant areas of consideration in his decision.

[¶ 8] The Collaborative submitted a petition for reconsideration in accordance with the 1978 CON Act. The Commissioner, in a twelve-page response, explained that he found ample support in the record for the Department's staff recommendation and

---

4. The Certificate of Need Act of 1978, 22 M.R.S.A. §§ 301–324 (1992 & Supp.2001) (CON Act), was repealed and replaced by the Maine Certificate of Need Act of 2002, 22 M.R.S.A. §§ 326–350–C (2004 & Supp.2004) (effective July 25, 2002). Neither party argues that the 2002 changes should be applied to these proceedings. See 1 M.R.S.A. § 302 (1989).

therefore declined to reconsider the decision.

[¶ 9] On May 5, 2003, the Collaborative filed a petition with the Superior Court seeking review of final agency action pursuant to the CON Act, 22 M.R.S.A. § 311 (1992 & Supp.2001), and the Administrative Procedures Act (APA), 5 M.R.S.A. §§ 11001–11008 (2002). On June 4, 2003, the Department filed the record on appeal pursuant to M.R. Civ. P. 80C(f). The Collaborative served notice upon the Department within ten days as required by M.R. Civ. P. 80C(f), contending, among other things, that the record was incomplete with respect to certain e-mail correspondence between the Department officials and MMC/SMMC representatives during the review process. The Collaborative made repeated requests for this information for several months, until finally it brought an action under the Freedom of Access Act (FOAA), 1 M.R.S.A. §§ 401–410 (1989 & Supp.2004), against the Department to force disclosure of specified e-mails relating to the CON review. On December 19, 2003, the Department turned over approximately 900 pages of e-mails and attachments to and from Department officials relating to the CON review. On January 7, 2004, the Collaborative filed a motion to modify or correct the record pursuant to 5 M.R.S.A. § 11006(2) and M.R. Civ. P. 80C(d), (e), and/or (f).

[¶ 10] On February 11, 2004, the Superior Court held the hearing on the appeal. Its order affirming the Commissioner's decision was entered on March 18, 2004, and concluded that the record could reasonably support the Commissioner's decision. After the hearing and order, the court denied the Collaborative's motion to modify the record. This appeal followed.

[¶ 11] On July 6, 2004, the Department produced still more e-mail correspondence pursuant to the FOAA order, which led the Collaborative to file a motion to modify or correct the record on appeal to this Court.

## II. LEGAL ANALYSIS

### A. Motion to Correct or Modify the Record to Include Evidence of Bias

[¶ 12] The argument before us focuses on the Collaborative's general assertion that the Department's decision was affected by bias and prejudice. Among other things, the Collaborative contends that e-mail messages that the Department did not include in the record evidence bias against the Collaborative. Because the court determined that the Collaborative's motion regarding the e-mail correspondence was filed too late, it did not address the bias claim relating to that correspondence.

[¶ 13] Before we can determine whether the court erred in failing to consider the proffered e-mails, we must determine the nature of those documents in this context. The Collaborative first argues that the e-mails were, or should have been, a part of the agency record on appeal. *See* M.R. Civ. P. 80(f). Alternatively they argue that the e-mails constituted ex parte communications and that they were entitled to a trial on the facts to allow them to present that evidence of bias to the court. *See* M.R. Civ. P 80C(e). We address each argument in turn.

#### 1. Supplementing the Record, M.R. Civ. P. 80C(f)

[¶ 14] The first argument, that the e-mails should have been a part of the agency record, requires a review of the contested communications to determine whether they were in the nature of documents that should have been included in the record forwarded by the administrative body. *See* M.R. Civ. P. 80C(f); 22 M.R.S.A.

§ 307(5–A)(C) (1992).[5] The court did not undertake that review because it found that the Collaborative's motion was untimely.

■ [¶ 15] The party contesting the adequacy of the record is required to provide notice of the claimed defect *to the administrative agency* within ten days. M.R. Civ. P. 80C(f). If the administrative agency and the party cannot agree on the record's contents, the party may move for the court to modify the record. *Id.* In these circumstances, the Superior Court will not conduct an evidentiary hearing to weigh the evidence, but must instead determine whether the proposed evidence is properly part of the agency record, and if so, the court will go on to review the record as completed.

[¶ 16] Here, the Collaborative did notify the Department within ten days of the filing of the record that it believed that some electronic correspondence was erroneously omitted from the record. The Collaborative thereby complied with the only timing requirement present in Rule 80C(f). When the Department failed to modify the record, the Collaborative obtained the correspondence through a FOAA action and then promptly filed its motion to correct the record.

■ [¶ 17] Because the court understood the Collaborative's motion to be a request to take additional evidence pursuant to M.R. Civ. P. 80C(e), which requires a motion *to the court* within ten days of the filing of the record, it did not address the Collaborative's motion to modify the record pursuant to Rule 80C(f). There was, however, no timing defect in the Collaborative's Rule 80C(f) motion, and the Superior

Court should have examined the procured correspondence to determine whether any of it should have been included in the record.

[¶ 18] The CON Act required the Department to include in the record "[a]ll ... correspondence ... submitted by applicants and interested or affected persons prior to the termination of the public comment period." 22 M.R.S.A. § 307(5–A)(C)(1). Electronic mail communications are correspondence more similar to a letter than a telephone conversation and would ordinarily be included in the record if such communications carried substantive information.

[¶ 19] On remand, the court should first consider whether the record should be corrected to include the electronic correspondence. *See* M.R. Civ. P. 80C(f). In evaluating the pieces of correspondence, the court may conduct a hearing if necessary to determine, for instance, the identity of the persons writing and receiving the correspondence. If the court expands the record to include any of the disputed e-mail correspondence, the court must then determine whether the entire record as augmented establishes that the Department was biased or prejudiced in favor of MMC/SMMC or against the Collaborative.

2. Adding Additional Evidence to the Record, M.R. Civ. P. 80C(e)

[¶ 20] The Collaborative next argues that even if the e-mail did not fall within the scope of the administrative record, the Superior Court should have reviewed it as additional evidence of the Department's bias pursuant to Rule 80C(e). *See Trimble*

---

5. Pursuant to the 1978 CON Act, "[a]fter a hearing commences, no appointed members of the ... department may communicate directly or indirectly in connection with any application with any affected party or anyone

acting in their behalf, except upon notice and opportunity for all affected parties to participate." 22 M.R.S.A. § 307(2–B)(J) (1992) (repealed 2002).

*v. Comm'r, Dep't of Human Servs.*, 635 A.2d 937, 938–39 (Me.1993). Rule 80C(e) applies when evidence that is not part of the record, and could not have been made a part of the record by the propounding party, is relevant to a determination before the court. It is not available to present evidence that the applicant should have presented to the agency, and is most appropriately asserted when there is evidence relevant to bias or prejudice, or, in some instances, an equitable defense or claim that could not have been addressed to the agency during the administrative proceedings.

[¶ 21] Rule 80C(e) requires that the party offering additional evidence file a motion for the admission of that additional evidence *with the court* within ten days after the administrative body filed the record with the Superior Court. Here, the court concluded that the motion was untimely because the Collaborative did not file its motion within ten days after the record was filed with the court. M.R. Civ. P. 80C(e). Accordingly, the court concluded that the Collaborative had waived "any right to the taking of additional evidence" pursuant to M.R. Civ. P. 80C(e).

■ [¶ 22] The Superior Court has the discretion to determine whether to take additional evidence on appeal from an agency's decision. *See Murphy v. Bd. of Envtl. Prot.*, 615 A.2d 255, 260 (Me.1992). Ordinarily, a court would not be said to have engaged in an unsustainable exercise of discretion in denying a motion pursuant to Rule 80C(e) when the moving party failed to adhere to the ten-day deadline. Indeed, in ordinary circumstances, the rule should be applied literally.

■ [¶ 23] In the circumstances of the present case, however, the late filing was occasioned by the failure of the agency to provide the pertinent information. Because the Collaborative began its search for the e-mail evidence promptly following the filing of the agency record, we would recognize a narrow exception to the ten-day deadline, and we vacate the court's denial of the motion to take additional evidence to the extent that it is based on an untimely filing.

[¶ 24] Accordingly, on remand, the court should first determine whether the correspondence should have been made a part of the record pursuant to M.R. Civ. P. 80C(f), or was additional evidence outside the record that may demonstrate bias or prejudice, M.R. Civ. P. 80C(e). The court should then address the Collaborative's claim of bias in light of the entire record.

## B. Constitutional Challenges

[¶ 25] In addition to the allegation of bias, the Collaborative challenges the Department's actions based on constitutional considerations, and also asserts that the Department acted in an arbitrary and capricious manner in requiring site plan approval with one CON application and not the other. Because the court on remand must reassess the entire record, we decline to address the question of whether the Department acted arbitrarily and capriciously. However, we address the constitutional issues for the purposes of judicial economy. *See Grover v. Boise Cascade Corp.*, 2004 ME 119, ¶ 23, 860 A.2d 851, 859.

### 1. Equal Protection

■ [¶ 26] The Collaborative argues that the Department violated its equal protection rights by treating Wentworth–Douglass differently during the review process because it is an out-of-state hospital. Because neither a fundamental right nor a suspect class is implicated, the Department's decision to consider the out-of-state status of one of the Collaborative's

hospitals is subject to rational basis scrutiny pursuant to the Equal Protection Clauses of the United States and Maine constitutions. U.S. CONST. amend. XIV, § 1; ME. CONST. art. I, § 6–A; *McBreairty v. Comm'r of Admin. & Fin. Servs.*, 663 A.2d 50, 53 (Me.1995); *Sch. Admin. Dist. No. 1 v. Comm'r, Dep't of Educ.*, 659 A.2d 854, 857 (Me.1995). Thus, we must determine whether the different treatment of the New Hampshire hospital is " 'rationally related to a legitimate state interest.' " *Green v. Comm'r of Mental Health & Mental Retardation*, 2000 ME 92, ¶ 21, 750 A.2d 1265, 1272 (quoting *Sch. Admin. Dist. No. 1*, 659 A.2d at 857).

■ [¶ 27] The 1978 CON Act instructed that the Department must consider whether "the proposed services are consistent with the orderly and economic development of health facilities and health resources for the State . . . ." 22 M.R.S.A. § 309(1)(D) (Supp.2001). The Department followed the dictates of the statute and concluded that it was preferable not to permit the Collaborative to develop the radiation facility in part because one hospital in the Collaborative was located in New Hampshire, thereby exempting it from Maine's licensing requirements. The State of Maine has a legitimate interest in being able to assess the quality of care in a proposed hospital at the detailed level necessary for Maine licensure. Accordingly, the Department had a rational basis for considering the out-of-state status of the New Hampshire hospital. We conclude that the Department's consideration of that factor as one of at least four significant factors did not constitute an equal protection violation.

### 2. Due Process

[¶ 28] The Collaborative contends that it was denied an opportunity to be heard on the issue of the change in the MMC/ SMMC site, in violation of its procedural due process rights. U.S. CONST. amend. XIV, § 1; ME. CONST. art. I, § 6–A.

■ [¶ 29] In a competitive CON review process, applicants and the public must have the opportunity to critically comment on the competing applications. *Hale v. Petit*, 438 A.2d 226, 232 (Me.1981).

[¶ 30] In the present case, the record demonstrates that the Collaborative had more than one opportunity to be heard regarding its own proposed site and the proposed MMC/SMMC sites. Indeed, a public hearing was scheduled to discuss the second MMC/SMMC site, as requested by the Collaborative. That request was withdrawn just days before the hearing, however. On this record, we can detect no procedural defect that rises to the level of a due process violation.

[¶ 31] Accordingly, we conclude that the record contains no evidence of error of constitutional magnitude. The court on remand, however, may take these matters into consideration as it reviews the entire record and determines whether there is evidence of bias against the Collaborative in the CON review process.

### C. Motion to Modify the Appellate Record

[¶ 32] Because we vacate and remand for the Superior Court to consider the correspondence obtained by the Collaborative pursuant to its FOAA request, we deny the Collaborative's motion to modify or correct the appellate record.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.