ENTERED NOV 0 3 2014

STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
LOCATION: Augusta
Docket No. AP-14-11

KEN-MMM-10-31-14

STEPHAN DREW,

           Petitioner,

    v.

MAINE UNEMPLOYMENT SECURITY
COMMISSION and NORTHEAST
CHARTER SCHOOL BUS SERVICES,
INC.,

           Respondents.

**ORDER ON PETITIONER'S M. R. CIV.
P. 80C APPEAL**

Petitioner Stephan Drew appeals from the Maine Unemployment Insurance

Commission's ("Commission") majority decision finding Petitioner voluntarily left his

regular employment with Northeast Charter School Bus Services ("Northeast") without

good cause and was therefore disqualified from collecting unemployment benefits.

Petitioner alleges he did not intend to resign his position, but merely wanted drive a

different route or take on a different position within Northeast. For the reasons discussed

below, the Court affirms the Commission's decision and denies Petitioner's appeal.

**I.    Background**

Petitioner Stephan Drew worked for Northeast Charter School Bus Services

("Northeast"), from August 26, 2011 to March 5, 2013 as a school bus driver for

Northeast's transportation business. Petitioner's initial duties consisted of working as a

"spare driver," taking on driving jobs on an as needed basis. Record ("R.") at 151, 439.

By the fall of 2012, and continuing until the end of his employment in March 2013,

Petitioner drove a school bus route Monday through Friday, mornings and afternoons. R.

at 409, 427, 439. Petitioner would occasionally drive the bus for special extra-curricular trips outside of school hours. R. at 440.

During 2012, Petitioner began experiencing difficulties with a particular child ("PC"), who routinely engaged in inappropriate behavior and would not comply with Petitioner's instructions. R. at 443. Petitioner filed disciplinary reports against PC on December 6, 2012, December 21, 2012, February 1, 2013, and March 4, 2013. R. at 112-117, 130, 286-93. Petitioner asked his manager, Christy McLain, why PC was not suspended after the second disciplinary report. R. at 2, 448. Ms. McLain explained it was because Petitioner issued the write up immediately prior to the Christmas break and too much time had elapsed to discipline PC by the time school came back into session after the holiday break. R. at 239, 448. Ms. McLain recommended that Petitioner place PC in the front of the bus. R. at 448.

On March 4, 2013, Petitioner told Ms. McLain that there had been another incident with PC and he would be issuing another disciplinary report. R. at 451, 301. This disciplinary report would have subjected PC to a ten-day suspension from the bus. R. at 242. The following day, March 5, 2013, Petitioner asked Ms. McLain why PC had not been removed from the bus. R. at 451, 2. Ms. McLain responded that PC's mother had called and wanted to set up a meeting with the superintendent (the "PC meeting"). R. at 451. Ms. McLain testified that PC's mother wanted the meeting to include Petitioner, the superintendent, Ms. McLain, and some witnesses. R. at 240.

There is a factual dispute as to what Ms. McLain told Petitioner on March 5, 2013 regarding the PC meeting. R. 2. Petitioner avers he was not told of the initially scheduled meeting date of March 7, 2013. *See* R. at 453-55. In support, he points to a

March 19, 2014 email correspondence between himself and the superintendent's assistant, Coleen Souza. *See* attachment to Pet.'s Brief. In the correspondence, Petitioner states that he had approached Ms. Souza on March 7, 2013 to inquire into the date of the meeting regarding PC and was informed that the meeting was postponed. *Id.* Ms. Souza did not verify any of Petitioner's claims and instead informed him that he should not contact the superintendent's office with questions about school bus operation as those services were contracted out. *Id.*

Ms. McLain claims she told Petitioner about the meeting while she and Petitioner were at an elementary school waiting to drive a bus route and would let Petitioner know the exact time of the meeting the following morning. R. at 241. Neither party disputes that Ms. McLain informed Petitioner on March 5, 2013 that a meeting regarding PC's conduct on the bus was in the works. The Commission majority found the testimony of Ms. McLain more credible than Petitioner's and determined that Ms. McLain informed Petitioner the PC meeting was scheduled for March 7, 2013. R. 2.

Later on March 5, 2013, Petitioner sent Ms. McLain a text message stating:

> HI CHRISTY, Just wanted to cover all bases. Left voice messages on both of your phones. Sorry again for the short notice. But I just can NOT make this afternoon's run. I am suffering from a SEVERE tension headache that feels like it is about to kill me. I need to get home and try to relax. Rather die in bed than on a school bus. ☺ Hope to be able to rest enough tonight to make tomorrow. My SINCEREST APOLOGIES for the inconvenience. But I would not be any good to anyone this way anyway. :{(

R. at 316, 451-53.

At approximately 4:19 a.m. the following day on March 6, 2013, Petitioner sent Ms. McLain another text message stating:

3

HI CHRISTY, I am sorry, but I am afraid that I am not going to be able to make it this morning. Been awake much of the night. I need to try and be rested for the safety meeting this morning. I have been thinking also that, under the circumstances, it may be better just to find someone else to take over that run. I do not feel that I can be objective anymore, with what has gone on. It would be better, I feel, for me to do something else. I really have no interest or desire to continue to drive that's [sic] run. I will drive trips or as a spare. But just no motivation to deal with that problem child(ren). I will talk more with you later. Thanks

R. at 303. 304, 306.

Petitioner maintains he did not intend to resign, but simply did not want to do his regular run and was willing to return to being a spare driver. R at 140, 455. Ms. McLain responded to Petitioner's March 6, 2013 text, "OK." R. at 420. Later that day, at approximately 10:30 a.m., Petitioner sent Ms. McLain another text message stating:

HI CHRISTY. I have an idea I thought I would pose to you. I wondered if Dan would be interested in taking over RT 2 and I could do 7. It would give him more hours (I don't really need them as much), and would make his travel down from Oakland every day more worthwhile for him. Much less idle time between, as well, with the Pre-K run. Given my history with this run, I think it might be better for all concerned. What do you think? See if Dan might be interested. I only know that I have no interest in that run at all. Let me know. Thanks.

R. at 308, 313. Ms. McLain spoke with the owner of Northeast, Scott Riccio, around 8:30 or 9:00 a.m. on March 6, 2013. R. at 245, 249-50. There is a factual dispute as to whether Ms. McLain subsequent left Petitioner a voicemail, at Mr. Riccio's direction, informing him that Northeast accepted his resignation and instructing him to turn in his keys and company issued shirts. Ms. McLain asserts she did call and leave said message. R. at 245, 249-50. Ms. McLain further testified that in accordance with her request, Petitioner willingly turned in his keys and shirts approximately three to four days after the message and stated that it was "time for [him] to find something else to do." R. at

4

245, 251. At the time he turned in his materials, Petitioner did not suggest that he had not resigned, or had been terminated. *Id.*

Petitioner claims Ms. McLain never made the alleged phone call. Pet.'s Brief, 6. He asserts he never received a call from Ms. McLain and attaches a copy of his cell phone record from the pertinent time, which appears to show no incoming calls from Ms. McLain on March 6, 2013. Pet.'s Brief, 6-7. In addition, Petitioner claims, without citation to the record, that he does not recall turning in his keys and company shirts until after his telephone call with Mr. Riccio on the evening of March 12, 2013. Pet's Brief, 7.

Mr. Riccio called Petitioner on March 12, 2013 to discuss the situation and accept Petitioner's resignation, although Northeast claims it had officially accepted Petitioner's resignation on March 6, 2013. R. at 145, 472. During that conversation, Mr. Riccio informed Petitioner that they were going to "part ways completely," referring in part to Petitioner's separation from Mr. Riccio's other company, a charter bus company. R. at 472. The Commission majority determined that Petitioner turned in his keys and company issued shirts three to four days after March 6, 2013, implicitly finding Petitioner turned in his materials before the March 12, 2013 call with Mr. Riccio. R. at 2.

Petitioner subsequently applied for and received unemployment benefits pursuant to Deputy Decision No. 57 which found that Petitioner was terminated but not for misconduct and therefore was eligible for unemployment benefits. R. at 27, 67, 497. Northeast appealed that determination to the Division of Administrative Hearings, which held a telephonic hearing on May 28, 2013. R. at 394-492, 494. The Administrative Hearing Officer issued a decision on May 31, 2013, concluding that Petitioner left his

employment voluntarily without good cause attributable to that employment. R. at 389-93. Petitioner appealed that decision to the Commission. R. at 388.

a. The Commission's Majority Decision

A three-person panel for the Commission held a hearing on December 10, 2013 for new and additional evidence. R. at 10, 65-279. Based upon the cumulative record, the Commission majority issued a decision affirming the decision of the Administrative Hearing Officer, concluding that Petitioner had left his job voluntarily without good cause. R. at 1-7.

The Commission majority determined that Petitioner's actions and statements, combined with Petitioner's lack of dependence on the income he earned from Northeast, indicated that Petitioner initiated the separation from Northeast. R. 3. In support, the Commission majority found that Petitioner's first text message on March 6, 2013, stating that he could no longer objectively complete his duties and would no longer drive his assigned route, was tantamount to a resignation. *Id.* The Commission majority explained that although Petitioner volunteered to perform other duties for the employer, Petitioner was resigning from performing the primary requirement of his job and unequivocally refused to continue driving his route because of the difficulties he was experiencing. *Id.*

The Commission majority also explained that Ms. McLain credibly testified that she called Petitioner later in the morning on March 6, 2013 after receiving Petitioner's text message and asked Petitioner to come in and drop off his keys and shirts. *Id.* The Commission majority found that Petitioner stopped by the office within three to four days of that message and dropped off his keys and shirts. R. at 2. At that time, Petitioner gave no indication that he had been terminated against his will or that the separation was

6

anything except voluntary. R. at 3. Furthermore, Petitioner stated that "it is time for me to find something else to do." *Id.* The Commission majority found this language indicated the Petitioner, not the employer, decided it was time to part ways.

The Commission majority also found that Petitioner did leave his employment for good cause within the meaning of 26 M.R.S.A. § 1193(1). *Id.* at 4. Although Petitioner experienced significant difficulties with PC in his job as a school bus driver, Petitioner did not afford the employer adequate time to resolve the situation before resigning. *Id.* The Commission majority explained that Northeast had scheduled a meeting with the superintendent of the school and PC's mother to address the continual write-ups that Petitioner had issued PC. *Id.* That meeting was scheduled for March 7, 2013, but rather than attend the meeting and explain the problems, Petitioner summarily resigned, refusing to address the issues and determine if the employer could resolve the situation. *Id.* Based on Petitioner's failure to provide Northeast with adequate time to address and change the offensive conditions, the Petitioner lacked good cause to leave his job. *Id.*

## II.    Standard of Review

In reviewing decisions of the Maine Unemployment Insurance Commission, the Court's review is "limited to determining whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson v. Maine Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. The Court will not disturb a decision of the Commission "unless the record before the Commission compels a contrary result." *Id.*; *see also Gerber Dental Center v. Maine Unemployment Ins. Comm'n*, 531 A.2d 1262, 1263 (Me. 1987).

7

Furthermore, the Court "will not overrule findings of fact supported by substantial evidence, defined as 'such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion.'" *Lewiston Daily Sun v. Maine Unemployment Ins. Comm'n*, 1999 ME 90, ¶ 7, 733 A.2d 344 (quoting *Crocker v. Maine Unemployment Ins. Comm'n*, 450 A.2d 469, 471 (Me. 1982)). When conflicting evidence is presented, such conflicts are for the fact finder to resolve. *Bean v. Maine Unemployment Ins. Comm'n*, 485 A.2d 630, 634 (Me. 1984). The Court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result. *Dodd v. Secretary of State*, 526 A.2d 583, 584 (Me. 1987); *see also Gulick v. Bd. of Envtl Protection*, 452 A.2d 1202, 1209 (Me. 1982). "The burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (citation omitted); *see also Bischoff v. Board of Trustees*, 661 A.2d 167, 168 (Me. 1995).

### III. Discussion

a. Whether the Commission Majority's Decision Properly Found that Petitioner Voluntarily Left his Employment.

Petitioner contends the Commission majority erred in finding that he voluntarily left his employment with Northeast. In support, Petitioner attacks four of the Commission majority's factual findings. First, Petitioner claims that any reasonable person reading his first text message on March 6, 2013 would note the qualifying language in the message and understand that Petitioner was willing to continue his employment in a different or lesser capacity. Pet.'s Brief, 3. Petitioner explains that he

8

was wiling to take on a position in which Northeast could utilize his services when, if, or as the company needed. *Id.* at 5.

Second, Petitioner claims the Commission majority erred in determining that Ms. McLain informed him that Northeast accepted his resignation and instructed him to turn in his keys and company shirts. *Id.* at 6. In support, Petitioner points to his cell phone record, which does not show a call from Ms. McLain on March 6, 2013. Petitioner also supports this claim by alleging he went to Ms. McLain's office of his own accord on the morning of Marcy 7, 2013 to ask about the status of any meeting with the child's mother. Pet.'s Brief, 6. Petitioner further points to a March 19, 2014 email he sent to the superintendent's assistant asking her to verify that he inquired about the PC meeting on March 7, 2013. These acts, Petitioner asserts, are inconsistent with him intentionally resigning on March 6, 2013.

Third, Petitioner contends the Commission majority erred in finding that he returned his keys and company shirts before his conversation with Mr. Riccio in which Mr. Riccio told Petitioner they were going to "part ways completely." *Id.* at 7. Fourth, Petitioner contends Ms. McLain lied regarding the information she allegedly provided to Petitioner about the PC meeting. *Id.* at 13-15.[1]

The Employment Security Law provides that an individual shall be disqualified for benefits "[f]or the week in which the claimant left regular employment voluntarily without good cause attributable to that employment." 26 M.R.S. § 1193(1)(A). The law Court has interpreted the term "voluntarily" in section 1193 to occur only "when freely

---

[1] Petitioner also takes issue with a characterization in Northeast's brief that Petitioner was assigned, as opposed to volunteer, the bus route at issue. Pet.'s Brief, 11. This issue is irrelevant because there is no evidence it impacted the Commission majority's decision in any manner. *See* R. at 1-5.

9

making an affirmative choice to do so." *Brousseau v. Maine Employment Security Comm'n*, 470 A.2d 324, 330 (Me. 1984). "Regular employment" is defined as "work at the individual's customary trade, occupation, profession or business as opposed to temporary or odd job employment outside of such customary trade, occupation, profession or business." 26 M.R.S. § 1043(22). The test for whether a job is other than regular employment has two prongs: "the employment must be both a temporary or odd job and outside of one's customary trade, occupation, profession or business." *Poor v. Maine Unemployment Ins. Comm'n*, 522 A.2d 1310, 1311 (Me. 1987).

Here, Petitioner has not met his burden of proof to demonstrate that no reasonable mind could accept as adequate the support behind the Commission majority's factual findings. *See Lewiston Daily Sun*, 1999 ME 90, ¶ 7, 733 A.2d 344

First, substantial evidence supports the Commission's factual determinations that Petitioner's March 6, 2013 text messages were "tantamount to a resignation." R. at 3. Although the March 6, 2013 text messages were tactfully worded and expressed a willingness to take on alternative functions within Northeast, the message is nevertheless clear that Petitioner was no longer willing to drive his regular route, which transported PC. *See* R. at 304 ("I do not feel that I can be objective anymore with what has gone on. It would be better, I feel for me to do something else. I really have no interest or desire to continue to drive that's [sic] run..."); R. at 308 ("I only know that I have no interest in that run at all"). This is because Petitioner's repeated offer to drive different routes does not change the nature of his resignation. As the Commission majority pointed out, Petitioner was not in a position to unilaterally change the terms of his employment. Accordingly, Petitioner has not met his burden to prove that no reasonable mind could find adequate

10

support for the Commission majority's interpretation of Petitioner's first—or second—March 6, 2013 text message as tantamount to resignation and the Court will not substitute its judgment for that of the Commission merely because the evidence could give rise to more than one result.

Second, the Commission's factual determination that Ms. McLain called Petitioner on the morning of March 6, 2013 and left a voicemail telling him to come in and drop off his keys and company shirts was supported by substantial evidence. In particular, Ms. McLain testified as to the time and substance of the alleged call. R. 245, 249-50. Furthermore, Ms. McLain testified that Petitioner, in accordance with her instructions, came into the office to drop off his keys and company shirt approximately three to four days after the call. R. at 245, 251. The Commission majority found Ms. McLain's testimony credible. R. at 3.

Petitioner contends he never received this call or message and attempts to introduce, for the first time, his cell phone bill from that time period and an email dated March 19, 2014. In order to introduce additional evidence in a M.R. Civ. P. 80C appeal, a party must file a motion seeking to introduce the evidence within 10 days after the record of the proceedings is filed. M.R. Civ. P. 80C(e). The failure to file such a motion "shall constitute a waiver of any right to the taking of additional evidence." *Id.* Furthermore, the Court has discretion as to whether additional evidence is necessary to complete the record. *York Hosp. v. Dep't of Human Servs.*, 2005 ME 41, ¶ 22, 869 A.2d 729. Here, Petitioner did not file a motion seeking to introduce additional evidence. Furthermore, even if Petitioner had complied with M.R. Civ. P. 80C(e), the cell phone records do not definitely prove Ms. McLain did not call Petitioner on March 6, 2013 as

11

she testified. For example, Petitioner has not asserted, or proven, that: 1) the only number Ms. McLain would call him at would be his cell phone; and 2) the only number Ms. McLain would call from would be the cell phone identified in the text messages. Similarly, the March 19, 2014 email occurred more than a year after the alleged phone call and contains no affirmation by Ms. Souza that she did in fact speak with Petitioner on March 7, 2013 about the PC meeting. Accordingly, Petitioner has not met his burden to prove that no reasonable mind could find adequate support for the finding that Ms. McLain did not call Petitioner on March 6, 2013 and tell him to drop off his keys and company shirts. The Court will not substitute its judgment for that of the Commission merely because the evidence could give rise to more than one result.

Third, substantial evidence supports the Commission's factual determination that Petitioner returned his keys and company shirts within three to four days after Ms. McLain called and left Petitioner a message on March 6, 2013. The Commission's determination is supported by Ms. McLain's testimony asserting the same. R. at 245, 251. Petitioner's assertion to the contrary, unsupported by any citation to the Record, fails to demonstrate that no reasonable mind could find adequate support for the finding that Petitioner returned his keys and company shirts three to four days after March 6, 2013, which is before Petitioner's phone call with Mr. Riccio on March 12, 2013. While the Commission majority could have distrusted Ms. McLain's testimony and found Petitioner turned in his keys and company shirts after the March 12, 2013 phone call, it did not and the Court will not substitute its judgment for that of the Commission merely because the evidence could give rise to more than one result. *See Dodd*, 526 A.2d at 584.

12

Fourth, substantial evidence supports the Commission majority's determination that Ms. McLain informed Petitioner, on March 5, 2013, that the PC meeting had been scheduled for March 7, 2013. The Commission's determination was based on Ms. McLain's testimony asserting that she informed Petitioner the meeting was scheduled for the next day and that she was just waiting for the exact time. R. at 241. Petitioner points to a March 5, 2013 email from Ms. McLain contending that it shows PC's mother called Ms. McLain on the afternoon of March 5, 2013. Petitioner contends this was after Ms. McLain spoke with him and that as a result, she could not have told him about the meeting scheduled for March 7, 2013 in the morning on March 5, 2013. Pet.'s Brief, 13-15 (citing R. at 301). Ms. McLain's March 5, 2013 email, however, explains that PC's mother called on March 4, 2013 making it possible for her to have told Petitioner about the call the following morning. *See* R. at 301. Accordingly, Petitioner has not proved that no reasonable mind could find adequate support for the finding that Ms. McLain did not inform Petitioner of the scheduled March 7, 2013 PC meeting on March 5, 2013.

b. Whether Petitioner Left his Regular Employment for Good Cause.

Petitioner appears to contend that PC's continued inappropriate behavior resulted in a deterioration of Petitioner's health and that Northeast was provided adequate opportunity to address the problem and change the offensive conditions. In support, Petitioner reiterates his argument that he was never advised of the scheduled time and date for the PC meeting. Pet.'s Brief, 9. Petitioner also argues that Northeast had ample opportunity to change the offensive conditions because Ms. McLain was aware of Petitioner's complaints since December 2012, but chose not to follow through with disciplinary measures. *Id.* at 10-11.

13

Petitioner bears the burden of proving that he resigned for good cause attributable to his employment. *Spear v. Maine Unemployment Ins. Comm'n*, 505 A.2d 82, 84 (Me. 1986). "Good cause must be measured against a standard of reasonableness under all the circumstances." *Snell v. Maine Unemployment Ins. Comm'n*, 484 A.2d 609, 610 (Me. 1984). "Good cause exists when the pressure of real, substantial and reasonable circumstances compels the employee to leave. The employee must be forced to quit because of outward pressures." *Sprague Elec. Co. v. Maine Unemployment Sec. Comm'n*, 544 A.2d 728, 731 (Me. 1988); *see also Merrow v. Maine Unemployment Sec. Comm'n*, 495 A.2d 1197, 1201 n.2 (Me. 1985) (good cause exists when the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment). Personal reasons, however compelling, do not constitute good cause attributable to one's employment. *See Snell*, 424 A.2d at 611; *see also Toothaker v. Maine Employment Sec. Comm'n*, 217 A.2d 203, 209 (Me. 1966). Furthermore, "for changed circumstances of employment causing a deterioration in health to constitute good cause, the employer must be given an opportunity to change the offensive conditions." *Merrow*, 495 A.2d at 1201.

Here, Petitioner has not met his burden of proof to demonstrate that the Commission majority committed an error of law or that no reasonable person could make the same factual findings as the Commission majority on the record presented. *See Lewiston Daily Sun*, 1999 ME 90, ¶ 7, 733 A.2d 344. As discussed above, the Commission majority had substantial support for its determination that Ms. McLain told Petitioner the PC meeting would take place on March 7, 2013. Furthermore, the Commission majority's determination that Petitioner failed to provide Northeast with

14

adequate time to address PC's behavior and change the situation is supported by substantial evidence. While Ms. McLain was aware of Petitioner's troubles with PC before March of 2013, Northeast was in the process of addressing that problem on the date Northeast, and the Commission majority determined Petitioner voluntarily resigned. Therefore, because Petitioner voluntarily resigned his position while Northeast was attempting to address his complaints with PC, Petitioner has not proved that no reasonable person could find he provided Northeast with sufficient opportunity to address the problem.

c. Petitioner Contends the Commission and Administrative Hearing Officer Were Biased In Favor of Northeast.

Petitioner contends Mr. Riccio has a close working, and perhaps personal, relationship with Governor LePage. Pet.'s Brief, 16. Petitioner contends Mr. Riccio used that relationship to influence Governor LePage to bias the Administrative Hearing Officer and Commission in favor of Northeast. *Id.* Petitioner also argues that an attorney for the law firm representing Northeast has close ties to Governor LePage and used them in the same manner as Mr. Riccio. *Id.* at 17.

In order to show bias, Petitioner "must present evidence sufficient to overcome a presumption that the fact-finders, as state administrators acted in good faith." *Friends of Maine's Mountains v. Bd. of Envtl Prot.*, 2013 ME 25, ¶ 23, 61 A.3d 689 (citations omitted).

Here, Petitioner has not presented sufficient evidence to overcome a presumption that the administrative hearing officer and Commission acted in good faith. Personal and working ties between Mr. Riccio—or even more tangentially the aforementioned attorney for Northeast—and Governor LePage combined with an adverse ruling for Petitioner do

15

not constitute sufficient evidence to overcome the presumption of good faith. Although the Commission majority, not the entire Commission, and the Administrative Hearing Officer ruled against Petitioner, this does not demonstrate bias.

The entry will be: Rule 80C Petition is DENIED.

Dated: October 31, 2014

Michaela Murphy, Justice
Maine Superior Court

16

Date Filed 2/19/14      <u>Kennebec</u>      Docket No. AP-14-11     F
                        County

Action: <u>Petition for Review</u>               **J. Murphy**
          80C

Stephan Drew           VS.        Unemployment Insurance Commission &
                                       Northeast Charter School Bus Services (PII)

---

Plaintiff's Attorney                         Defendant's Attorney

Stephan Drew, Pro Se                  Nancy Macirowski, AAG
PO Box 197                              6 State House Station
Winthrop, ME 04364                 Augusta, ME 04333

                                         John B. Cole, Esq. (PII)
                                         95 Main Street
                                         Auburn, ME 04210

                                         Michael Buescher, Esq. (Winthrop School Dept)
                                         84 Marginal Way, Suite 600
                                         Portland, ME 04101

Date of Entry

---

| Date | Entry |
|------|-------|
| 2/20/14 | Petition for Review of Final Agency Action, filed (2/19/14). s/Drew, Pro Se |
| 3/5/14 | Entry of Appearance, filed. s/Macirowski, AAG |
| 3/12/14 | Entry of Appearance for PII, filed (3/10/14). s/Cole, Esq. |
| 4/2/14 | Administrative Record, filed. s/Macorowski, AAG |
| 4/2/14 | Notice and Briefing Schedule issued. Copy to Stephan Drew, Nancy Macirowski, John Cole. |
| 4/30/14 | Request For Suspension Of Running Time For Petitioner's Brief Filing, filed 4/29/14. s/Drew, Pro Se |
| 5/6/14 | Letter indicating no objection to granting Mr. Drew additional time to file his brief, proposing an additional 30 days with all other dates extended a commensurate time period, filed. s/Macirowski, AAG |
| 5/9/14 | ORDER, Murphy, J. Petitioner has until 6/13/14 to file brief. Court cannot otherwise provide legal advice to Petitioner as requested. |
| 5/16/14 | Objection to the Inclusion of Northeast Charter School Bus Services as a Party in the Current Matter, filed 5/15/14. s/Drew, Pro Se |
| 6/3/14 | Motion to Quash Subpoenas, filed. s/Cole, Esq. |

| | |
|---|---|
| 6/10/14 | Letter indicating Respondent UIC joins Motion to Quash Subpoenas, filed 6/9/14. s/Macirowski, AAG |
| 6/10/14 | Request for a Court Order Waiving the Requirement of Petitioner's Brief Filing, filed 6/6/14. s/Drew, Pro Se |
| 6/13/14 | Objection to Petitioner's Request for a Court Order Waiving the Requirement of Petitioner's Brief Filing, filed 6/12/14. s/Cole, Esq. |
| 6/17/14 | Motion hearing scheduled 7/8/14 at 11:00 Notice of Hearing sent to Petitioner, AAG Macirowski, Atty Cole |
| 6/25/14 | Motion to Quash Non-Party Witness Subpoena to Non-Party Winthrop School Department, filed. s/Buescher, Esq. |
| 6/25/14 | Copy of Notice of Hearing sent to Atty Buescher. |
| 7/7/14 | ORDER on Motion to Quash Subpoenas, Murphy, J. GRANTED. Copy to Petitioner, AAG Macirowski, Atty Cole, Atty Buescher |
| 7/7/14 | ORDER, Murphy, J. (Motion to Quash Non-Party Witness Subpoena) MOOT. See order this same date issued on motion filed by Northeast Charter School Bus Services. Copy to Petitioner, AAG Macirowski, Atty Cole, Atty Buescher |
| 7/8/14 | Hearing held. J. Murphy. AAG Macirowski and Atty Cole appeared. Petitioner did not appear. Tape 1902, Index 3005-3210. |
| 7/9/14 | ORDER on Petitioner's Request for Court Order Waiving the Requirements of Petitioner's Brief Filing, Murphy, J. (7/8/14) 1) Petitioner's request for waiver of the requirement of filing a brief in this action is DENIED in part. 2) The Court will decide the case on briefs. Briefs shall be filed by Respondents (MUSC and Northeast Charter Bus Services) by August 15. Petitioner may respond by August 22, 2014, and case taken under advisement at that time. Copy to Petitioner, AAG Macirowski, Atty Cole, Atty Buescher |
| 7/11/14 | ORDER, Murphy, J. (7/10/14) (re: Request to Dispense with Pending Hearing on Motions and for a Motion for Summary Judgment) Court construes this as request to file a motion for Summary Judgment. Request is DENIED. Copy to Petitioner, AAG Macirowski, Atty Cole, Atty Buescher Document returned to Petitioner |
| 8/15/14 | Brief of Respondent, filed. s/Macirowski, AAG |
| 8/19/14 | Brief of Northeast Charter School Bus Services, Inc., filed 8/15/14. s/Cole, Esq. |
| 8/25/14 | Answer to Brief of Respondent(s), filed 8/22/14. s/Drew, Pro Se |

10/31/14    ORDER ON PETITIONER'S 80C APPEAL, Murphy, J.
            Rule 80C Petition is DENIED.
            Copy to Petitioner, AAG Macirowski, Atty Cole, Atty Buescher
            Copy to Repositories

10/31/14    Notice of removal of Record sent to AAG Macirowski